# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Tereather T.,[1]

          Plaintiff,

v.

Kilolo Kijakazi,
*Acting Commissioner of Social Security*,

          Defendant.

Case No. 22-cv-3216 (DJF)

**ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Tereather T. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Decision"). This matter is before the Court on the parties' briefs. Plaintiff asks the Court to remand this matter for further administrative proceedings, including a *de novo* hearing and decision (ECF No. 16 at 15). Defendant asks the Court to affirm the Commissioner's Decision (ECF No. 21 at 14). For the reasons given below, the Court grants Plaintiff's request in part, denies Defendant's request, and remands this matter to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Order.

## BACKGROUND

### I.   Plaintiff's Claim

Plaintiff filed an application for DIB on July 7, 2020.[2] (Soc. Sec. Admin. R. (hereinafter

---

[1]   This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

[2]   Plaintiff appears to have initiated her application on June 23, 2020 (R. 260-265) but did not file it until July 7, 2020 (R. 16, R. 120).

"R.") 120.)[3]   At that time she was a 64-year-old woman with two years of college and previous

work experience as a cook.  (R. 260, 306.)  Plaintiff alleged she became disabled on June 3, 2020

(R. 271), resulting from hernia, hypertension, irritable bowel syndrome, cataracts, osteoarthritis in

her back and hands, major depressive disorder, and generalized anxiety disorder (R. 305).

## II.    Regulatory Background

An individual is considered disabled for purposes of Social Security disability benefits if

she is "unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than twelve months."  42 U.S.C.

§ 1382c(a)(3)(A).   In addition, an individual is disabled "only if [her] physical or mental

impairment or impairments are of such severity that [s]he is not only unable to do [her] previous

work but cannot, considering [her] age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy."  *Id.* § 1382c(a)(3)(B).  "[A]

physical or mental impairment is an impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically acceptable clinical and

laboratory diagnostic techniques."  *Id.* § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine

whether an individual is disabled.  20 C.F.R. § 416.920(a)(4).  At step one, the claimant must

establish that she is not engaged in any "substantial gainful activity."  *Id.* § 416.920(a)(4)(i).  The

claimant must then establish at step two that she has a severe, medically determinable impairment

or combination of impairments.  *Id.* § 416.920(a)(4)(ii).  At step three, the Commissioner must

---

[3]  The Social Security administrative record (R.) is filed at ECF No. 7.  For convenience
and ease of use, the Court cites to the record's pagination rather than the Court's ECF and page
numbers.

find that the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing").  *Id.* § 416.920(a)(4)(iii).[4]  If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four.  The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving that she cannot perform any past relevant work.  *Id.* § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

A claimant who is 55 years old or older is considered "a person of advanced age" for purposes of social security.  20 C.F.R. § 404.1568(d)(4).  When a claimant of advanced age has severe impairments that limit her to sedentary or light work and she is unable to perform her past relevant work, the Commissioner should find she cannot make an adjustment to other work unless she has acquired skills from her past relevant work that she can transfer to other skilled or semiskilled work she can do despite her impairments.  *Id.*  Whether a claimant's skills are transferable depends largely on the similarity of occupationally significant work activities.  *Id.* § 404.1568(d)(1).  Skill transferability is most probable among jobs with: (1) the same or a lesser degree of skill; (2) the same or similar tools and machines; and (3) the same or similar raw materials, products, processes, or services.  *Id.* § 404.1568(d)(2).  But complete similarity in these

---

[4]   The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected.  *See* 20 C.F.R Part 404, Subpart P, App. 1.

3

areas is not required.  *Id.* § 404.1568(d)(3).  A claimant with at least a high school education is generally considered capable of performing semiskilled through skilled work.  *Id.* § 404.1564(b)(4).

"The claimant is in the best possible position to describe just what he or she did [in past relevant work], how it was done, what exertion was involved, what skilled or semiskilled work activities were involved …. Neither an occupational title by itself nor a skeleton description is sufficient."  S.S.R. 82–41 at *4.

If a claimant is quickly approaching retirement age—age 60 or older—and has impairments that limit her to no more than light work, the Commissioner should find she has skills that are transferrable to skilled or semiskilled light work only if the light work is so similar to her previous work that she would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.  20 C.F.R. § 404.1568(d)(4); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, 202.00(f) ("Medical Vocational Guideline") (same).  If the claimant does not have transferable skills, or the claimant's skills are not readily transferable to a significant range of semiskilled or skilled work within her RFC, the Commissioner should find her disabled.  20 C.F.R. § 404, Subpt. P, App. 2 §§ 202.00(c), 202.06; *see also* SSR 82-41 at *5 ("In order to establish transferability of skills for [individuals of advanced age], the semiskilled or skilled job duties of their past work must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation.")

While the ALJ may rely on a vocational expert or the DOT for assistance, it is the ALJ's responsibility to determine the "skills, levels of skills and potential occupations to which skills from [past relevant work] may be transferred."  S.S.R. 82-41, at *4.  When transferability is

4

material to the outcome, an ALJ must "make certain findings of fact and include them in the written decision." *Id.* at *6. Those findings of fact must identify "the acquired work skills" and the "specific occupations to which the acquired work skills are transferable." *Id.*

## III.   Procedural History

The Commissioner denied Plaintiff's application for DIB initially (R. 148-152) and on reconsideration (R. 158-160). On October 20, 2021, at Plaintiff's request (R. 161-162), an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application. Plaintiff and a vocational expert testified at the hearing. (R. 31-60.) Plaintiff was represented by an attorney. (R. 31.) After the hearing, the ALJ considered whether Plaintiff was disabled between June 3, 2020, the alleged date of onset of her disability, and December 9, 2021, the date of the ALJ's Decision. (R. 16- 25.)

The ALJ determined that Plaintiff had: (1) multiple non-severe mental and physical impairments including: cocaine use disorder; cannabis use disorder; depression; anxiety disorder; antisocial personality disorder; status post fracture of the right wrist; degenerative joint disease of the fingers; mixed cataracts, hyperopia and dry eye syndrome of both eyes; right foot mild degenerative joint changes; hypertension; mild degenerative disc disease; and alleged hernia (R. 19-20); and (2) multiple physical impairments, which at least in combination were severe: gastroesophageal reflux disease (GERD); irritable bowel syndrome with chronic idiopathic constipation; pelvic floor weakness/pelvic floor coordination dysfunction; fecal incontinence; and urinary incontinence (R. 19). The ALJ found, however, that Plaintiff's impairments did not meet or medically equal any impairment in the Listing. (R. 20.) The ALJ thoroughly catalogued the mental and physical health evidence in the record (R. 21-23), and determined that:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b)
> with occasionally lifting and/or carrying, including upward pulling, up to 20

pounds; frequently lifting and/or carrying, including upward pulling, up to 10 pounds; standing and/or walking, with normal breaks for a total of 6 hours in an 8-hour workday; sitting, with normal breaks, for about 6 hours in an 8-hour workday; pushing and/or pulling, including the operation of hand/foot controls, is unlimited, other than as shown for lifting and/or carrying; frequently stooping, kneeling, crouching, or crawling; and the claimant requires access to a bathroom within 100 feet of her workstation.

(R. 21.)

During her hearing, Plaintiff testified that she worked as a cafeteria cook in a Goodwill store from 2005 to 2017. (R. 42-43.) She explained that she was the head cook at times, but she did not plan meals or order supplies. Instead, she prepared meals that were pre-planned and sometimes served them. (R. 42-44.) She also testified that her position did not involve short-order cooking. (R. 43.) In a work history report, Plaintiff stated that her position involved: (1) use of machines, tools, or equipment; (2) use of technical knowledge or skills; and (3) writing, completing reports, or similar duties. (R. 331.)

In her Decision, the ALJ classified Plaintiff's past relevant work as "cook" (representative Dictionary of Occupational Titles ("DOT") #315.361-010) (R. 24), skilled, with a specific vocational preparation ("SVP") code of six, generally/actually performed at the medium level, and requiring the skill of "working and preparing food in the environment of cooking." (R. 24.) The DOT job description for this position provides:

> Prepares and cooks family-style meals for crews or residents and employees of institutions: Cooks foodstuffs in quantities according to menu and number of persons to be served. Washes dishes. Bakes breads and pastry [BAKER (hotel & rest.)]. Cuts meat [BUTCHER, MEAT (hotel & rest.)]. Plans menu taking advantage of foods in season and local availability. May serve meals. May order supplies and keep records and accounts. May direct activities of one or more workers who assist in preparing and serving meals. May be designated according to work location as Cook, Camp (any industry); Cook, Institution (any industry); Cook, Ranch (agriculture); Cook, Ship (water trans.).

DICOT 315.361-101 (G.P.O.), 1991 WL 671574. The ALJ determined that since the demands of

6

this job exceed Plaintiff's RFC, she is unable to perform past relevant work.  (R. 24.)  Before determining whether Plaintiff acquired skills in this job that could transfer to other jobs that exist in the national economy, the ALJ noted Plaintiff had at least a high school education, was 64 years old, and was quickly approaching retirement age on the alleged onset date of her disability. (R. 24.)

Prior to Plaintiff's hearing, a vocational expert identified "knowledge of preparation of food in large quantity" as a skill acquired in Plaintiff's past relevant work.  (R. 444.)  During Plaintiff's hearing, the ALJ solicited testimony from the vocational expert regarding whether a hypothetical individual with Plaintiff's age, education, past relevant work, and RFC had skills that would transfer to other jobs that the hypothetical person could perform.  (R. 53-55.)  The vocational expert responded that the hypothetical individual "would be limited to working in the environment of cooking," but her skills would transfer to a light-level, semiskilled short order cook job with an SVP code of three (representative DOT #313.374-014 "cook, short order").  (R. 54.)  The DOT job description for this position provides:

> Prepares food and serves restaurant patrons at counters or tables: Takes order from customer and cooks foods requiring short preparation time, according to customer requirements. Completes order from steamtable and serves customer at table or counter. Accepts payment and makes change, or writes charge slip. Carves meats, makes sandwiches, and brews coffee. May clean food preparation equipment and work area. May clean counter or tables.

DICOT 313.374-014 (G.P.O.), 1991 WL 671574.   The vocational expert testified that approximately 300,000 of these jobs exist nationally (R. 54).  The vocational expert also testified that the hypothetical individual's skills would transfer with little, if any, vocational adjustment in terms of tools, work processes, working settings, or the industry (R. 55).

Based on the vocational expert's testimony, and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff has skills from her past relevant work

that would transfer to other jobs that exist in significant numbers in the national economy. (R. 24- 25.)   The ALJ first determined that Plaintiff's past relevant work required the skill of "working and preparing food in the environment of cooking."  (R. 24.)  The ALJ then explained:

> The vocational expert was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity as the claimant, and which require skills acquired in the claimant's past relevant work but no additional skills.  The vocational expert responded and testified that representative occupations such an individual could perform include: a cook (DOT # 313.374-014, light level semi-skilled job with an SVP of three, 300,000 jobs nationally).  The undersigned finds that the vocational expert identified a significant number of jobs in the national economy.

(R. 24-25.)  The ALJ further found the vocational expert's testimony was consistent with the information contained in the DOT and appropriately supplemented by his training and experience in the field.  (R. 25.)  The ALJ explained:

> Based on the testimony of the vocational expert, the undersigned concludes that the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. The vocational expert testified the claimant's previous work is so similar to the jobs [sic] recited above that the claimant would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.

(R. 25.)  The ALJ concluded on that basis that Plaintiff is not disabled.  (R. 25.)  The Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1-4), and this lawsuit followed.

## DISCUSSION

### I.      Standard of Review

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted).  It is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  This "threshold … is not high." *Id.*  "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that, "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review).  In other words, "an ALJ is required to construct a 'logical bridge' between the evidence and [her] conclusion." *Jacobs v. Astrue*, No. 08-cv431, 2009 WL 943859 at, *3 (D. Minn. April 6, 2009) (quoting *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir.2000).

## II.    Analysis

Plaintiff argues the ALJ committed reversible error at step five of the sequential analysis by improperly determining the transferability of her skills from past work.  (ECF Nos. 16 at 6-15; 22 at 1-3.)  Plaintiff contends the skills she acquired from her past work as a cook did not actually transfer to the position the vocational expert identified.  (ECF No. 16 at 10-12.)  She cites to the differences between the DOT job descriptions and her own testimony that her past relevant work did not involve short order cooking or related competencies.  (*Id.*)  Plaintiff further contends, "[a]t no point in the record does the [vocational expert] clarify any additional skills Plaintiff acquired in her past job as a cook and thus it remains unclear on review what evidence supports both the [vocational expert] and the ALJ's conclusions that Plaintiff could transfer such skills to the new

job of short order cook." (*Id.* at 11.)  Plaintiff points out that because she was 64 years old when she applied for DIB, social security regulations mandate that her skills be found non-transferable unless "very little, if any" adjustment is required.  (*Id.* at 13,citing C.F.R. § 404.1568(d)(4).) Plaintiff also points out that because the transferability of her skills was material to the ALJ's Decision, the ALJ was required to "make certain findings of fact and include them in her decision." (ECF No. 22 at 2, citing S.S.R. 82-4, at *6.)

Defendant contends substantial evidence supports the ALJ's finding that Plaintiff could seamlessly transfer her skills related to large-quantity food preparation to the less physically demanding job of short order cook, and further contends the ALJ adequately addressed the issue in her Decision.  (ECF No. 21 at 7-12.)  Defendant argues that while Plaintiff's past relevant work is not identical to the short order cook job there are sufficient similarities between the jobs, and that the vocational expert's testimony was enough to establish transferable skills.  (*Id.* at 10.) Defendant further argues Plaintiff waived any argument related to the vocational expert's testimony because she failed to raise the issue at the administrative level.  (*Id.* at 10-12.)

Upon careful review of the record, the Court concludes the ALJ erred by failing to adequately explain in her Decision how Plaintiff's skills from her past relevant work as a cook, DOT #315.361-010, transfer to the job of short order cook, DOT #313.374-014.  Prior to Plaintiff's hearing, the vocational expert identified Plaintiff's acquired skill from her past relevant work as "knowledge of preparation of food in large quantity."  (R. 444.)  During Plaintiff's hearing, the vocational expert testified that a hypothetical individual with Plaintiff's age, education, past relevant work, and RFC "would be limited to working in the environment of cooking," but her skills would transfer to the short order cook job.  (R. 54.)  Plaintiff also testified during the hearing that her past relevant work did not involve short order cooking.  (R. 43.)  In her Decision, the ALJ

cited "hearing testimony" to conclude that Plaintiff's acquired skill from her past relevant work was "working and preparing food in the environment of cooking." (R. 24.) She thus determined that Plaintiff "would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry," to transfer this skill to the short order cook job because her past relevant work was "so similar." (R. 25.)

Because transferability of Plaintiff's skills is material to the outcome of whether Plaintiff can perform other work that exists in the national economy, the ALJ was required to "make certain findings of fact and include them in the written decision" including "the acquired work skills" and the "specific occupations to which the acquired work skills are transferable." S.S.R. 82-41, at *4. While the ALJ identified Plaintiff's acquired work skill as "working and preparing food in the environment of cooking," and identified short order cook, DOT #313.374-014, as an occupation to which Plaintiff can transfer that skill, the ALJ failed to create the required logic bridge between the evidence and her conclusion. *Jacobs*, 2009 WL 94385, at *3.

First, it is unclear how the ALJ reconciled the vocational expert's initial identification of Plaintiff's acquired work skill as "knowledge of preparation of food in large quantity" and Plaintiff's own testimony with the ALJ's finding that Plaintiff's acquired work skill was "working and preparing food in the environment of cooking." While the ALJ may rely on a vocational expert or the DOT for assistance, it is ultimately the ALJ's responsibility to determine the "skills, levels of skills and potential occupations to which skills from [past relevant work] may be transferred." S.S.R. 82-41, at *4. It is not clear from the ALJ's Decision, or from any hearing testimony, what the ALJ considered to reach this conclusion, or whether substantial evidence supports it.

Second, based on the hearing testimony and upon review of the job descriptions, the ALJ's Decision fails to create a logical bridge explaining how any skill Plaintiff acquired in her past

11

relevant work, DOT #315.361-010, vocationally prepared her to perform the short order cook job, DOT #313.374.  In her past relevant work, Plaintiff "[prepar[ed] and cook[ed]family-style meals for crews or residents and employees of institutions." DICOT 315.361-101 (G.P.O.), 1991 WL 671574.  The ALJ failed to make clear how either of Plaintiff's alleged acquired work skills enabled her to "prepare[] food and serve[] restaurant patrons at counters or tables" or "take[] order[s] from customer[s] and cook[] foods requiring short preparation time" as required by the short order cook job DOT #313.374.  As an example, based on the DOT description, the job of short order cook requires satisfying individual customer orders with fast turn-around times.  There is no information in the record to suggest Plaintiff's past work required that skill.  Without additional analysis supporting the ALJ's conclusions and reconciling inconsistencies, the Court cannot meaningfully review whether substantial evidence supports her determination that Plaintiff has skills that are truly transferrable to the short order cook job, or any other job, with the requisite limited vocational adjustment as required for a claimant rapidly approaching retirement age. *Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008).  The ALJ's transferability determination was therefore erroneous and requires remand.  *Id.*; *see also Fines v. Apfe*l, 149 F.3d 893, 896 (8th Cir.1998) (Heaney, J., dissenting) (citing SSR 82–41) (finding remand appropriate where ALJ failed to appropriately support finding that claimant had transferrable skills).

## CONCLUSION

For these reasons, the Court vacates the Decision and remands this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) with directions to supplement the record.  42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.")   On remand the ALJ

should: (1) create a logical bridge explaining how she considered or resolved the material inconsistencies in the case record to support her conclusion that Plaintiff has transferrable work skills with only limited vocational adjustment; and (2) if necessary, recall a vocational expert for additional testimony.

## ORDER

Based on all the files, records, and proceedings herein, **IT IS ORDERED** that:

1.  Plaintiff's Request for Relief (ECF No. [16]) is **GRANTED**;

2.  Defendant's Request for Relief (ECF No. [21]) is **DENIED**;

3.  The Commissioner's denial of benefits is reversed and this matter is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C § 405(g) for further administrative proceedings consistent with this Report and Recommendation; and

4.  This matter is **DISMISSED WITH PREJUDICE**.

Dated: December 1, 2023                                 *s/ Dulce J. Foster*
                                                        DULCE J. FOSTER
                                                        United States Magistrate Judge